United States District Court
Middle District of Florida
Jacksonville Division

**SHAUN MURPHY,**

      **Plaintiff,**

**v.**                                    **NO. 3:23-cv-384-MMH-LLL**

**ENPROVERA CORP.,**

      **Defendant.**

---

### Report and Recommendation

Before the Court is Defendant's Motion to Dismiss Second Amended Complaint, or in the Alternative, Motion for Final Summary Judgment and Incorporated Memorandum of Law. Doc. 20. This motion has been referred to me for the issuance of a report and recommendation regarding an appropriate resolution. Doc. 31.  For the reasons discussed below, I recommend that the motion to dismiss be granted and the Second Amended Complaint be dismissed.

### Background

Plaintiff initiated this action by filing a complaint in April 2023, after exhausting his administrative remedies with the Equal Employment Opportunity Commission (EEOC). Docs. 1, 1-3.[1] The Court sua sponte struck plaintiff's complaint because it

---

[1] Defendant does not dispute plaintiff's allegation that plaintiff properly exhausted his administrative remedies prior to filing this lawsuit. *See* doc. 20 generally; *see also Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004)("Prior to filing a Title VII action [] a plaintiff first must file a charge of discrimination with the EEOC.").

constituted an impermissible "shotgun pleading." Doc. 6 at 1. Plaintiff filed an amended complaint, doc. 16, which was, again, struck by the Court, doc. 18. The Court held a status conference in which it, among other things, explained to plaintiff's counsel in detail the applicable pleading standards with regards to claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.* Plaintiff indicated he understood the Court's direction and was ordered to refile his complaint in accordance with the legal requirements discussed.[2] Plaintiff then filed his Second Amended Complaint (SAC) in June 2023, which is now the operative complaint. Doc. 19.

The facts as alleged by plaintiff are as follows:[3] Defendant, Enprovera Corp., is a Florida corporation with its principal place of business in Tampa, Florida. SAC ¶ 13. Defendant employed plaintiff between November 2021 and March 2022. *Id.* ¶ 10. Defendant is a subcontractor working under Amentum/PAE (PAE), *id.* ¶ 14, the prime contractor on the Postal Mailbag Transportation Equipment Service (PMTESC) contract. *Id.* Plaintiff describes himself as "a Caucasian male" who "is bi-polar." *Id.* ¶ 8.

---

[2] Although not reflected on the docket, the Court reviewed the rough transcript of the hearing.

[3] The facts that I considered in analyzing defendant's motion are those set forth in the SAC and its attachments. Doc. 19, 19-1 and 19-2. Although defendant refers to "exhibits" throughout its motion, doc. 20, it did not attach any exhibits or submit any evidence with its motion. Defendant attached fourteen exhibits to its first dispositive motion, doc. 10, but that motion was denied by the Court without prejudice. Doc. 12. Because I recommend dismissal of the SAC under Rule 12, the exhibits are not needed, nor considered, in my analysis.

On November 29, 2021, defendant hired plaintiff as a night-shift forklift operator. *Id.* ¶ 23. Plaintiff alleges he was the only Caucasian employee working on the night shift. *Id.* ¶ 24. Plaintiff also explains that he regularly worked with two unnamed "African American cousins." *Id.* ¶ 25. According to plaintiff, these coworkers "threatened [plaintiff] with severe bodily harm, threw things at [plaintiff,] and regularly threatened to kill him." *Id.*

Plaintiff alleges that on an undisclosed date, he reported the threats of violence to his manager, "Larry," who is also African American.[4] *Id.* ¶ 26. Plaintiff states he explained to Larry that plaintiff "needed to be able to take breaks to cool down after being subjected to constant threats and hostilities" because "they were causing a relapse of his Bi-Polar symptoms." *Id.* According to plaintiff, when asking for "accommodations . . . Larry informed [plaintiff] that he had previously fired an employee for having Bi-Polar Disorder." *Id.* ¶ 27. Plaintiff alleges Larry said "he would not address the issue[5] as he wanted to protect the accused employees' employment." *Id.*

According to plaintiff, he complained "directly to [defendant's] management" on January 31, 2022. *Id.* ¶ 28. Plaintiff contacted defendant's program manager for the PMTESC contract, Tom Irwin, and explained that his coworkers "threatened him with severe bodily harm, threw things at him, and regularly threatened to kill him."

---

[4] Plaintiff acknowledges that defendant does not have a presence at plaintiff's workplace. SAC ¶ 26, n.1. Thus, it is unclear what, if any, relationship Larry has to defendant.

[5] It is not clear what specific "issue" plaintiff is describing here.

*Id.* Plaintiff told Mr. Irwin that "he felt the treatment he had been subjected to was a 'racial thing' since he is the only Caucasian working the night shift." *Id.* Following plaintiff's complaint, defendant suspended one of the accused employees pending investigation. *Id.* ¶ 29.

The day after plaintiff spoke with Mr. Irwin, on February 1, 2022, defendant interviewed plaintiff's PAE plant manager,[6] who stated, "a cardboard sleeve was flung over the back of the bin and hit [plaintiff] in the head. There was no serious injury."[7] *Id.* ¶ 30. On February 7, 2022, defendant's human resources director, who is not named, emailed plaintiff with complainant interview questions and these instructions:

> Attached you will find questions for you to complete based on the information I have received. If you could, please take a few moments to review and complete these to the best of your knowledge and return it to me. We will then use these as a basis for our discussion.

*Id.* ¶ 32. The next day, on February 8, 2022, plaintiff returned the complainant interview questions to the human resources director, detailing the alleged harassment. *Id.* ¶ 33.[8] That same day, one week after first notifying Mr. Irwin, defendant's program manager, of the alleged harassment, plaintiff sent the following email to Mr. Irwin:

---

[6] Plaintiff does not name the plant manager; thus, it is unclear whether the plant manager is the same employee previously described as Larry. SAC ¶ 30.

[7] It is not clear from the SAC when this incident allegedly occurred, or who was involved, but plaintiff claims he underwent electroconvulsive therapy "to recover from the strike." *See* SAC ¶ 31.

[8] This document is not attached to the SAC and, beyond general statements about threats and the incident involving the cardboard sleeve, no other details of the alleged harassment are included in the SAC. *See* SAC ¶¶ 25, 26, 28 30, 31, 33.

4

> I informed the nighttime supervisor Larry that I have a medical emergency and need to admit myself into the hospital. My mental health is collapsing, and it's from everything that's happening at the MTESC.[9] I'm not well right now. I've developed suicidal thoughts from the extreme stress I've been forced to deal with. Once I have a clear head and get better from what I am experiencing at the moment, I'll shoot you an email detailing exactly what I mean. I need to get better for my family. The hospital I'll be admitted to is Riverpoint Behavioral, in Jacksonville Florida. The doctors there know me.

*Id.* ¶ 34. Plaintiff states defendant responded by "removing the second cousin from the workplace and terminating the employment of both accused." *Id.* ¶ 35. Defendant also granted plaintiff's "request for leave to undergo intensive inpatient therapy stating, 'when you are feeling better, I want to discuss and create a plan for you to return to work, if you want to return.'" *Id.* On February 22, 2022, plaintiff informed defendant he wanted to return to work on February 28, 2022. *Id.* ¶ 36.

On February 24, 2022, plaintiff alleges the human resources director stated his healthcare provider must complete "a Return-to-Work Plan which included a Fitness for Duty Form and an ADA Accommodation Request Form before they would allow him to return to work." *Id.* ¶ 37. Instead of filling out the requested documents, plaintiff sent "a copy of his Social Security Letter," stating he was disabled. *Id.* Plaintiff also asked about his pay for the time he spent away for "his necessary medical treatment resulting from his hostile work environment." *Id.* On February 28, 2022, plaintiff claims that "instead of providing [him] with [defendant's] worker's compensation

---

[9] The acronym "MTESC" is not defined, and the term is not used elsewhere in the SAC. The Court assumes that plaintiff is referring to the PMTESC.

policy," the human resources director wrote to plaintiff "stating that the forms for disability were being obtained from the insurance company." *Id.* ¶ 38.

On March 3, 2022, plaintiff provided defendant with his completed return-to-work plan, which stated his return date would be April 20, 2022.[10] *Id*. ¶ 39. On March 7, 2022, defendant sent plaintiff "an email and letter" stating:

> You have been absent from work since February 9, 2022, and you have exhausted the unpaid leave granted to you as an accommodation. You are not eligible for any additional leave as required by state and federal laws and we are unable to continue accommodating your absence. Regrettably, we must terminate your employment effective March 7, 2022.

*Id.* ¶ 41. Plaintiff alleges defendant denied him an "interactive process by terminating his employment[,]" *id.* ¶ 42, and that his short-term disability application was denied by defendant's insurer because "[plaintiff's] disability was a preexisting condition." *Id.* ¶ 43.

In his nine-count SAC, plaintiff alleges defendant: violated the Americans with Disabilities Act - disability discrimination (Count I); violated Title VII of the Civil Rights Act – race discrimination (Count II); violated the Americans with Disabilities Act – retaliation (Count III); violated Title VII Of the Civil Rights Act – hostile work environment (Count IV); violated the Florida Civil Rights Act – disability

---

[10] Although defendant refutes the allegation that plaintiff provided the return-to-work paperwork, at this stage of the proceedings, the Court must accept well-pleaded allegations as true. *Iqbal*, 556 U.S. at 679 ("When are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

discrimination (Count V); violated the Florida Civil Rights Act – race discrimination (Count VI); violated the Florida Civil Rights Act – retaliation (Count VII); violated the Florida Civil Rights Act – hostile work environment (Count VIII); and committed worker's compensation retaliation (Count IX).

Defendant moved to dismiss the SAC, or in the alternative, for summary judgment. Doc. 20. Plaintiff responded, doc. 25, and defendant replied, doc. 30.

## Analysis

### I.     The SAC should be dismissed because it violates the Eleventh Circuit's prohibition against shotgun pleading.

As an initial matter, the SAC should be dismissed because it violates the Eleventh Circuit's prohibition against shotgun pleadings. *See Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10(b) also provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count or defense." *Id.* Rules 8 and 10:

> work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief

> can be granted, and, at trial, the court can determine that
> evidence which is relevant and that which is not.

*Fikes v. City of Daphne,* 79 F.3d 1079, 1082 (11th Cir. 1996) (quoting *T.D.S. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1543 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both are often disparagingly referred to as 'shotgun pleadings.'" *Weiland,* 792 F.3d . at 1320. Shotgun pleadings are "altogether unacceptable," and "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. State of Fla.,* 117 F.3d 1258, 1263 (11th Cir. 1997). The Eleventh Circuit has opined that all shotgun pleadings share one unifying characteristic, "they fail to one degree to another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland,* 792 F.3d at 1323.

There are four categories of shotgun pleadings: 1) a complaint which contains multiple counts where each count adopts the allegations of all preceding counts; 2) a complaint "guilty of the venial sin" of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; 3) a complaint which does not separate into a different count each cause of action or claim for relief; and 4) a complaint which asserts multiple claims against multiple defendants without specifying which defendants are responsible for which act or omission. *See id.*

Plaintiff's SAC arguably violates each of the four categories of shotgun pleading in one manner or another, but most relevant here is that he fails to "separate into a different count each cause of action or claim for relief." *Weiland*, 292. F3d 1322-23. For example, as to count I, entitled "Violations of the Americans with Disability Act, Disability Discrimination," Plaintiff fails to clearly articulate under what theory he is proceeding, conflating the claims of disability harassment and adverse employment action. SAC ¶¶ 44-59. Plaintiff's briefing in response to the motion to dismiss does little to clarify his position. *See* Doc. 25 at 5-12.

Additionally, in count II, entitled "Violations of Title VII of the Civil Rights Act, Race Discrimination" plaintiff fails to clarify whether he is proceeding under a hostile work environment theory or disparate treatment theory. SAC ¶¶ 60-74. As separate causes of action with distinct elements, hostile work environment and disparate treatment claims must be pled separately. Plaintiff titles count IV, "Violations of Title VII of the Civil Rights Act, Hostile Work Environment," which may indicate that plaintiff intends count II to be a disparate treatment claim, but again this is unclear.

These issues continue throughout plaintiff's SAC as he conflates allegations of disparate treatment, hostile work environment, and retaliation. *See e.g.,* SAC ¶¶ 66, 71, 81, 85, 106, 108. The Court has previously cautioned plaintiff to avoid such shotgun pleadings (*see* Order, doc. 6 and minute entry for hearing, doc. 18) and has twice before struck plaintiff's complaint for failure to abide by Fed. R. Civ. P. 8 and 10(b). *Id.* Yet plaintiff has failed to make the requested changes and does not adequately address the

arguments set forth by defendant in its motion to dismiss. *See generally* doc. 25. Plaintiff has been given multiple opportunities to amend, yet he has been unable to meet the required pleading standards to move forward with his claims. Thus, I respectfully recommend that the SAC be dismissed as a shotgun pleading.

## II. The SAC should be dismissed for failure to state a claim.

Defendant also moves to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. Doc. 20. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained this requires that "a complaint . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In deciding a Rule 12(b)(6) motion, a district court should construe the complaint broadly and view the allegations in the light most favorable to the plaintiff. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citation and quotation omitted). "Although a Title VII complaint need not allege facts sufficient to make out a . . . prima facie case . . . it must provide enough factual matter (taken as true) to suggest [the discriminatory counts

10

alleged]." *Marshall v. Mayor & Alderman of City of Savannah, Ga.*, 366 F. App'x 91, 100 (11th Cir. 2010) (internal citations and quotations omitted).[11]

### A. Counts I and V do not state a claim for disability discrimination or harassment under the ADA or FCRA.

<u>1. Disability Discrimination</u>

It appears plaintiff attempts to allege that defendant committed disability discrimination in violation of the Americans with Disabilities Act (ADA), count I, and the Florida Civil Rights Act (FCRA), count V. Disability discrimination claims brought under the FCRA are analyzed using the same framework as ADA claims. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) *see also Greene v. Seminole elec. Co-op., Inc.*, 701 So.2d 646, 647 (Fla. 5th DCA 1997) (noting the FCRA should be construed in conformity with the ADA).

Plaintiff argues he met his burden under the motion to dismiss standard by alleging he is bipolar; that when he told his supervisor Larry he was bipolar, the supervisor informed him that he had previously terminated an employee with bipolar disorder; and that defendant refused to engage in an interactive process to allow plaintiff to return to work following his mental health treatment. Doc. 25 at 6; SAC ¶¶ 49, 106. Defendant argues the SAC should be dismissed because, among other reasons, "[d]espite this being the third version of the [c]omplaint, it is still unclear to [defendant] whether [plaintiff] is alleging disability harassment or an adverse

---

[11] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

employment action." Doc. 20 at 9. While counts I and V are titled "disability discrimination," defendant is correct that it is unclear from the content of the claims whether plaintiff intends to plead disability discrimination or disability harassment. This, in and of itself, warrants dismissal under the Eleventh Circuit's prohibition on shotgun pleadings, discussed *supra*, but because the SAC also fails to plausibly allege a claim for either disability discrimination or disability harassment, I address these both in turn.

The elements of ADA disability discrimination are: "(1) [plaintiff] is disabled; (2) [plaintiff] is a qualified individual;[12] and (3) [plaintiff] was subjected to unlawful discrimination because of his disability." *Holly*, 492 F.3d at 1255-56. A disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Merely having an impairment, does not render one disabled. *See Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1155 (11th Cir. 2005) (emphasizing that impairment must substantially limit a major life activity to rise to the level of a disability under § 12102(2)(A)). To satisfy the disability definitions under § 12102(1)(A), plaintiff must show that his bipolar disorder substantially limits one or more of his major life activities. *Id.* "[T]hat determination must be made on a case-by-case basis." *Id.* Major life activities include "functions such as caring for oneself,

---

[12] At this juncture, defendant does not dispute that plaintiff is a qualified individual under 42 U.S.C. § 12111(8).

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357–58 (11th Cir. 2004) (citing 45 C.F.R. § 84.3(j)(2)(ii)).

As noted above, plaintiff alleges he is bipolar, SAC ¶¶ 8, 45, 102, and that "because of [his] bipolar disorder he had to undergo Electroconvulsive Therapy" to recover from being struck, presumably by "a cardboard sleeve," while at work on an undisclosed date. *Id.* ¶ 31. The only other allegation in the SAC that makes any specific reference to plaintiff's mental health is an email he sent to his supervisor indicating he was admitting himself to the hospital because his "mental health is collapsing and it's from everything that's happening at the MTESC." *Id.* ¶ 34. The email generally references "suicidal thoughts" and "extreme stress," but does not provide more specifics. *Id.* However, given the procedural posture, I find that at this stage, plaintiff has sufficiently alleged he suffers from a disability, specifically bipolar disorder. *Id.*[13]

But plaintiff fails to adequately allege the third element— that he was subject to unlawful discrimination *because* of his disability. "[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue

---

[13] In his response, plaintiff states he "has been under the psychiatric care of Dr. Daniel A. Lewis, M.D. since October 1, 2020, for the treatment of severe bipolar 1 mood disorder[,]" doc. 25 at 6, and attaches a one-page letter from Dr. Lewis, doc. 25-1. Specific reference to this letter or its contents, however, is not included in plaintiff's SAC; nor is the letter attached to the SAC. Thus, I do not consider it here.

hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A). "[A]n employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is otherwise qualified, and unless the employer can show undue hardship." *Holly*, 492 F.3d at 1262 (internal quotations omitted). While race and sex employment discrimination cases often require a showing that employers treat similarly situated employees differently because of their race or sex, "the very purpose of reasonable accommodation laws is to require employers to treat disabled individuals differently in some circumstances—namely, when different treatment would allow a disabled individual to perform the essential functions of his position by accommodating his disability without posing an undue hardship on the employer." *Id.* at 1262-1263.

Plaintiff makes two specific allegations of discrimination based on his bipolar disorder: (1) that his supervisor Larry informed him he had previously terminated an employee with bipolar disorder; and (2) that defendant refused to engage in an interactive process to allow plaintiff to return to work following his treatment. Doc. 25 at 6; SAC ¶¶ 49, 106.

First, it is not clear who employs Larry or how his comments, without more, rise to the level of disability discrimination.  Plaintiff alleges he "reported the threats of violence and death threats from these employees to his African American manager, 'Larry.'" SAC ¶ 26. But plaintiff also states that "[defendant] has no management presence at the PMTESC worksite . . . [and] [s]ite management is handled through the prime, PAE." *Id.* at n.1. Thus, it appears that Larry is not employed by defendant and,

thus, his comments cannot be imputed onto defendant. Even if the Court were to conclude that defendant and PAE should be treated as joint employers, as plaintiff urges, the statement alone, without more, is conclusory and the SAC is devoid of specific facts that support that 1) Larry discriminated against plaintiff, and 2) the discrimination was because of his bipolar diagnosis.

Although the SAC generally alleges disability discrimination, it is not clear whether the basis is defendant's denial of the "interactive process," failing to make some other reasonable accommodation, or taking other adverse employment action. As discussed above, this is a sufficient basis for dismissal in and of itself. Regarding the merits of plaintiff's claim, however, I consider that a claim against an employer for failing to engage in an interactive process requires the plaintiff first make a request for reasonable accommodation.[14] *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 946 (11th Cir. 2017) (finding that, because the plaintiff identified no reasonable accommodation, there is no basis for imposing liability on [defendant] for failing to engage in an interactive process) (citations and quotations omitted)). But the SAC does not clearly identify that any reasonable accommodation was requested by plaintiff.

The Court, doing its best to decipher the ambiguities in the SAC, identifies three potential requests for reasonable accommodation: 1) plaintiff explaining to Larry that

---

[14] Under the ADA, a "reasonable accommodation" means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R § 1630.2(o)(1)(ii).

"he needed to be able to take breaks to cool down[,]" SAC ¶ 26; 2) plaintiff's email informing defendant that he checked himself into the hospital, *id.* ¶ 34; or 3) plaintiff providing his "required paperwork" to defendant, indicating a return-to-work date of April 20, 2020, *id.* ¶ 39.

The request to take breaks appears only once in the SAC, *id.* at 26, and it was made to Larry, whose relationship to defendant, if any, is not clearly defined. And although a request to take breaks can be a reasonable accommodation,[15] plaintiff does not allege that this request was made to, and rejected by, defendant directly. In arriving at this conclusion, I note that plaintiff's January 31, 2020 email to defendant does not even mention a request to "take breaks to cool down." *Id.* at 26. In fact, nowhere in the SAC does plaintiff allege he made a request to defendant to take breaks to cool down at work. *See id. generally.*

Similarly, the next potential request for reasonable accommodation, the January 31, 2020 email, misses the mark because plaintiff did not make any request, but rather, merely informed defendant he was checking himself into the hospital and that he would be back in touch. *See id.* ¶ 34. Despite this, and by plaintiff's own admission, defendant "granted [plaintiff] his request for leave to undergo intensive inpatient therapy." *Id.* ¶ 35.

---

[15] *See Kassa v. Synovus Fin.Corp.*, 800 F. App'x 804, 810 (11th Cir. 2020) (reversing trial court's grant of summary judgment to employer defendant who denied the bipolar plaintiff's request to take short breaks because "an employer's failure to provide a reasonable accommodation is itself a violation of the ADA").

Finally, the last identified potential request for accommodation again fails to allege factual support with any level of specificity that would plausibly support a claim for disability discrimination. *See id.* ¶ 39. "Although a leave of absence might be a reasonable accommodation in some cases, a request for indefinite leave is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future." *Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 477 (11th Cir. 2018) (citations and internal quotations omitted). On February 22, plaintiff stated he wanted to return to work on February 28. *Id.* at 36. About 10 days later, plaintiff changed his requested return date to April 20. He also claims to have filed unspecified paperwork, but fails to allege exactly what the paperwork said, or any connection between the requested return date and his bipolar disorder. Additionally, it is not alleged that plaintiff informed anyone other than Larry about his bipolar diagnosis. *See* SAC ¶ 48, and generally.

Thus, I find plaintiff fails to allege a request for reasonable accommodation that would obligate defendant to engage in an interactive process. Without a request for reasonable accommodation, I need not address whether defendant engaged in an interactive process. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir. 1997) ("[W]e have held that, where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant.").

## 2. Disability Harassment

In an abundance of caution,[16] I also analyze whether the SAC sufficiently alleges a disability harassment claim. The elements of disability harassment are: 1) the employee is a qualified individual with a disability under the ADA; 2) he was subject to unwelcome harassment; 3) the harassment was based on his or her disability; 4) the harassment was sufficiently severe or pervasive to alter the conditions of his or her employment and to create an abusive work environment; and 5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *McCaw Cellular Commc'ns of Florida, Inc. v. Kwiatek*, 763 So. 2d 1063, 1066 (Fla. 4th DCA 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) and *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).  The Court must consider these factors in determining whether plaintiff's work environment is hostile or abusive: the "frequency of the discriminatory conduct; its severity; whether it was physically threatening, humiliating, or just a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Id*. at 1066 (internal citations omitted).

To the extent that plaintiff intends to bring a disability harassment claim, it again appears to be based Larry's statement regarding having fired an employee for having bipolar disorder, and defendant's refusal to engage in an interactive process.

---

[16] In his response regarding Counts I and V, plaintiff cites the elements for a disability discrimination claim, doc. 25 at 5, then on the next page cites the elements of a disability harassment claim, *id.* at 6-7; this further confuses whether plaintiff intends to plead disability discrimination or disability harassment. As addressed below, this violates the rules against shotgun pleading and is, in and of itself, a basis for dismissal. *See Weiland,* 792 F.3d at 1323 (11th Cir. 2015).

SAC ¶¶ 49, 106. In its motion to dismiss, defendant argues 1) Larry's "single statement does not satisfy the element that the harassment be so severe and pervasive as to alter the conditions of [plaintiff's] employment;" and 2) the "purported failure by [defendant] to engage in an interactive process to allow [plaintiff] to return to work is not harassment[.]" Doc. 20 at 10.

As discussed above, plaintiff fails to clearly allege who employs Larry, thus his acts cannot be imputed onto defendant. And even if Larry and defendant were to be treated as joint employers, the alleged harassment, a single statement that Larry had fired another employee "for having Bi-Polar disorder," SAC at 27, does not adequately state a claim. *See Gilliard v. Georgia Dept. of Corrs.*, 500 F. App'x 860, 870 (11th Cir. 2012) (alleged harassment for only one week in the plaintiff's eleven month employment was not sufficiently severe or pervasive); *see also Errickson v. Lakeland Reg'l Med. Ctr. Inc.*, no. 8:22-cv-00533-VMC-CPT, 2022 WL 3139223, *5 (M.D. Fla. August 5, 2022) (granting motion to dismiss hostile work environment claim because plaintiff's allegation "that her supervisors harassed her through weekly discussions that were 'aggressive and a constant attack on her work abilities[]'" lacked the specificity or factual support to suggest that she faced severe or pervasive harassment). And while plaintiff may have subjectively perceived the treatment as severe and pervasive, the sole comment, when viewed objectively, is not sufficiently severe or pervasive to be actionable. *See Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (the requirement that the harassment be "severe or pervasive" contains an objective and a subjective component).

Plaintiff's claim that he was deprived an interactive process similarly fails under a disability harassment analysis. While plaintiff is not required to set forth a prima facie case, he must still provide enough factual matter (taken as true) to allege that the harassment was because of his disability. *Marshall*, 366 F. App'x 91 at 100.  The few facts that plaintiff alleges with regard to his bipolar disorder cannot be construed as harassment. Further, plaintiff acknowledges that when notified about his need to take a leave of absence, defendant engaged with him to provide paperwork and to "discuss and create a plan for [plaintiff] to return to work." SAC ¶¶ 35, 37.  Thus, it is unclear how this could satisfy the requirement that the harassment was sufficiently pervasive or severe. I respectfully recommend that counts I and V be dismissed.

### B.  Counts IV and VIII fail to state a claim for hostile work environment under the Civil Rights Act and FCRA.

Title VII of the Civil Rights Act and the FCRA are analyzed under the same framework. *Fuller v. Edwin B. Stimpson Co. Inc.*, 598 F. App'x 652, 653 (11th Cir. 2015). *See also Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) (holding that the trial court correctly dismissed plaintiffs' FCRA retaliation claim because plaintiffs could not maintain a retaliation claim under Title VII). A plaintiff seeking to establish a hostile work environment claim under Title VII must show:

> (1) [he] belongs to a protected group; (2) [he] has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under a theory of either vicarious or direct liability.

20

*Alhallaq v. Radha Soami Trading, LLC,* 484 F. App'x 293, 295 (11th Cir. 2012) (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002)).

Upon a review of the SAC, I find plaintiff fails to plausibly allege a claim of hostile work environment. Although defendant does not dispute that plaintiff, as a Caucasian male, is a member of a protected class, the SAC fails to make a single allegation that the alleged unwelcome harassment he received from his co-workers was based on his race. Plaintiff asserts he is the only Caucasian on the night shift, SAC ¶ 24, and that his coworkers are African American, *id.* ¶ 25. He also alleges that he "told [defendant] that he felt the treatment he had been subjected to was a 'racial thing.'" *Id.* ¶ 28.  These are the only allegations in the SAC that pertain to the race of either plaintiff or his co-workers, yet he concludes he was harassed because of his race without any additional supporting facts. The Supreme Court has firmly established that a "pleading that offers labels and conclusions . . . will not do." *Iqbal,* 556 U.S. at 678 (citations and quotations omitted); *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010) (affirming trial court's dismissal of § 1981 hostile work environment claim, and noting "[t]he facts that [plaintiff] is Caucasian and that the co-workers who were threatening and shunning him were Hispanic or Latino, by themselves, do not state a plausible claim of race discrimination.").

Additionally, "[w]here the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action."

21

*Miller*, 277 F.3d at 1278. Plaintiff does not allege that defendant failed to take prompt action upon being notified of the alleged harassment; the facts as alleged in the SAC illustrate quite the opposite. For instance, plaintiff states he informed defendant's management of the alleged harassment on January 31, 2022; defendant acted by suspending one of the accused coworkers pending investigation, *id.* ¶¶ 28-29. Plaintiff also acknowledges that defendant interviewed plaintiff's plant manager on February 1, 2022, the day after he complained, *id.* ¶¶ 28, 30; sent plaintiff complainant interview questions a week later, *id.* ¶ 32; and provided plaintiff the steps for completing a return-to-work plan two days after plaintiff indicated he wanted to return to work, *id.* ¶ 36, 37. Additionally, defendant terminated both accused co-workers upon receiving plaintiff's responses to the complainant interview questions. *Id.* ¶ 35. Thus, the SAC fails to allege facts that defendant failed to take prompt remedial action once it learned of the alleged harassment; instead, it shows defendant took prompt remedial action as soon as it became aware of plaintiff's concerns. Because plaintiff fails to allege a claim for hostile work environment, I respectfully recommend that counts IV and VIII be dismissed.

### C. Counts II and VI do not state a claim for race discrimination under the Civil Rights Act or the Florida Civil Rights Act.

Counts II and VI[17] are also titled as claims of race-based discrimination. As noted above, plaintiff makes conclusory allegations that defendant discriminated

---

[17] Title VII claims and FCRA claims are analyzed under the same framework. *Harper*, 139 F.3d at 1389.

against him because he was the "only Caucasian" working the night shift and the co-workers who harassed him were "African American." *Id*. ¶¶ 24-25. Again, it is unclear what type of mistreatment plaintiff is alleging here, but as I have already concluded that plaintiff fails to state a claim for hostile work environment, I assume plaintiff attempts to allege disparate treatment here—namely that he was treated differently than his non-Caucasian co-workers. SAC ¶¶ 24-28.  The elements of a Title VII race discrimination claim are: 1) plaintiff belongs to a protected class; 2) he was qualified to do the job; 3) he was subjected to adverse employment action; and 4) his employer treated similarly situated employees outside his class more favorably. *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008). In a disparate treatment case, the "employer simply treats some people less favorably than others because of their [race]. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (citations omitted).

"An adverse employment action is a serious and material change in the terms, conditions, or privileges of employment." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014) (citation and quotations omitted). "Generally, an adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. "The employee's subjective view of the significance and adversity of the employer's action is not controlling." *Id*.

"Rather, the employment action must be materially adverse as viewed by a reasonable person under the same circumstances." *Id.*

Plaintiff alleges his co-workers discriminated against him by "threatening him with severe bodily harm; throwing things at him; and ignoring his complaints regarding racial discrimination." SAC ¶ 64. However, there is nothing to indicate these actions changed plaintiff's employment status, job responsibilities, or terms of his employment. Plaintiff also alleges, "[d]efendant's personnel further perpetuated the discrimination by terminating [his] employment," *id.* ¶ 71. It is unclear which of these actions plaintiff believes to be the adverse employment action, but giving him the benefit of the doubt and construing plaintiff's firing as the adverse employment action, I conclude he still cannot make out a claim for disparate treatment.

Employees are similarly situated if they "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citation and quotations omitted). Here, plaintiff is not alleged to have been similarly situated to his two co-workers because they were not accused of the same conduct. Rather, plaintiff was the employee who accused his co-workers of misconduct, SAC ¶ 28; as noted above, he acknowledges they were terminated by defendant after an investigation, *id.* ¶ 35. Beyond the confusing statement that "Larry responded to [plaintiff's] complaint and request for accommodation by stating that he would not address the issue as he wanted to protect the accused employees' employment[,]" *id.* at ¶ 27, the SAC is devoid of allegations that plaintiff's coworkers were treated more favorably than he. Without

24

more, plaintiff fails to allege his employer treated similarly situated employees outside his class more favorably. *See Hopkins v. Saint Lucie Cnty. School Bd.*, 399 F. App'x 563, 566 (11th Cir. 2010) (affirming trial court's dismissal of plaintiff's Title VII disparate treatment claim because "[h]e provides no facts that would allow a court to infer that the school district treated those outside the class of African–American males more favorably"). I respectfully recommend dismissing Counts II and VI.

### D. Counts III and VII fail to state a claim for retaliation under the ADA or FCRA.

Count III alleges that defendant subjected plaintiff to an adverse employment action for taking a medical leave of absence as an accommodation to treat his disability. SAC ¶ 81. In count VII, plaintiff again alleges defendant retaliated based on his request for leave, but adds a claim of race-discrimination retaliation, specifically that: "[d]efendant subjected Plaintiff to adverse employment actions in retaliation for his complaint of racial discrimination and for taking a medical leave of absence to accommodate his disability." *Id.* ¶ 135. Plaintiff then alleges, generally, that defendant's actions "by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation." *Id.* ¶¶ 82, 136. Defendant claims this constitutes shotgun pleading because it comingles multiple transactions and occurrences into a cause of action and lacks the clarity for defendant to determine what plaintiff is claiming. Doc. 20 at 17-18.

I agree, as discussed above, that Count VII constitutes a shotgun pleading because it claims disability-based and race-based retaliation, which are separate causes

of action. As noted, this, in and of itself, is a basis for dismissal. *See Weiland*, 792 F.3d at 1321. Even considering the claim on its merits, however, plaintiff's race-based retaliation claim in Count VII is still based on the same predicate acts as the disability retaliation claims. *See* SAC ¶¶ 76-81, 129-135. Plaintiff alleges no facts connecting his complaint of racial discrimination to his firing. Thus, I construe Count VII, like count III, as a claim for disability-based retaliation.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). The elements of an ADA retaliation claim are: "(1) [plaintiff] engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001).

Plaintiff was terminated and defendant does not dispute that he suffered an adverse employment action. SAC ¶ 80, 134; *Freytes-Torres v. City of Sanford,* 270 F. App'x 885, 894 (11th Cir. 2008) ("Termination is an ultimate employment action that is undeniably adverse."). The next question the Court considers is whether the plaintiff engaged in statutorily protected expression, which is speech regarding unfair employment practices if the employment practice is made unlawful by Title VII. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). Plaintiff must show that he "had a good faith, reasonable belief that [defendant] was engaged in unlawful employment practices" to establish he engaged in statutorily protected expression.

26

*Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). This standard has both a subjective and an objective component:

> A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir. 1997) ("that the opposition of an employee to a co-worker's own individual act of discrimination does not fall within the protection of [Title VII]" (citation and quotations omitted)).

"The first element," however, "may [also] be met by a request for a reasonable accommodation." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).

> The term "reasonable accommodation" may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Although plaintiff subjectively alleges that defendant was engaged in unlawful employment practices, for the reasons discussed above, I do not find the SAC alleges facts that would objectively support plaintiff's belief.

Plaintiff states he "explained to Larry he needed to be able to take breaks to cool down after being subjected to constant threats and hostilities as they were causing a

relapse of his Bi-Polar symptoms." SAC ¶ 26. Plaintiff then states that when he explained his need for accommodations to Larry, "Larry informed [defendant] that he had previously fired an employee for having bipolar disorder . . . and that he would not address the issue as wanted to protect the accused employees' employment." *Id.* ¶ 27. Thus, for the reasons previously discussed, I find plaintiff fails to adequately allege he made a request for reasonable accommodation to defendant, and thus, the SAC does not plausibly allege he was engaging in statutorily protected expression. I respectfully recommend that plaintiff's claims for retaliation under counts III and VII be dismissed.[18]

### E. Count IX does not state a claim for worker's compensation retaliation under Florida law.

In the final count of the SAC, count IX, plaintiff attempts to bring a claim for Workers' Compensation Retaliation under Florida Law. "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. This cause of action requires an affirmative "claim" or "attempt" to seek workers' compensation, rather than merely informing an employer of an injury. *Jubak v. Michaels Stores, Inc.*, 143 F. Supp. 3d 1195, 1204 (M.D. Fla. 2015) (citing *Chase v. Walgreen Co.,* 750 So.2d 93, 99 (Fla. 5th DCA 1999) (plaintiff's filing of several workers' compensation claims is protected activity));

---

[18] Because the Court finds that the plaintiff fails to plausibly allege that he was engaged in protection expression, it need not consider whether he sufficiently alleges a causal connection between that protection expression and his adverse employment action.

*Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So.2d 182, 184 (Fla.1983) (Section 440.205 applies to "an employee's pursuit of a workers' compensation claim."); *Bifulco v. Patient Bus. & Fin. Servs., Inc.*, 39 So.3d 1255, 1257 (Fla.2010) ("Section 440.205 . . . creates a cause of action for employees who are subject to retaliatory treatment by their employers for attempting to claim workers' compensation."); *Silvers v. Timothy J. O'Donnell Corp.*, 751 So.2d 747, 748 (Fla. 5th DCA 2000) (plaintiff was "applying for workers compensation" when terminated). "No published case in Florida has held that a § 440.205 claim is viable in the absence of the filing of a workers' compensation claim or an affirmative attempt or threat to do so." *Jubak,* 143 F. Supp. 3d at 1204 (citing *Villavicencio v. Siemens Power Transmission, & Distribution, Inc.*, 867 So.2d 628 (Fla. 3d DCA 2004)).

Informing an employer of an injury, without more, is not protected conduct. *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1295 (S.D. Fla. 2014) (rejecting plaintiff's argument that when he notified Defendant of his injury, he was asserting a valid claim for workers' compensation). Here, plaintiff fails to allege that he made an affirmative attempt to seek workers' compensation benefits. Plaintiff argues his initial complaint to defendant about being hit over the head with cardboard was an "attempt[] to file a workers' compensation claim[,]" doc. 25 at 19, even though he alleges "[t]here was no serious injury." SAC ¶ 30. And the SAC states that plaintiff merely informed defendant of his injury by complaining to defendant about the cardboard incident. The SAC is devoid of any allegation that plaintiff made an

affirmative attempt to claim workers' compensation, which is an essential element of the claim; thus it must be dismissed.

### III.    Motion for Summary Judgment.

Defendant, in the alternative, moves for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of showing the Court there is no genuine issue of material fact to be decided at trial. To that end, defendant must "identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(e)). Once defendant has met this burden, plaintiff must present specific facts showing there is a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

Typically, summary judgment is improper in cases such as this where discovery has not yet occurred. *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (reversing district court's grant of summary judgment because plaintiff was denied the opportunity to fully engage in discovery). Because I recommend dismissal of the SAC in its entirety under Rule 12, the Court need not undertake a separate review of defendant's claims under Rule 56.

## Recommendation

I respectfully **recommend**:

1.   Defendant's Motion to Dismiss Second Amended Complaint, or in the Alternative, Motion for Final Summary Judgment and Incorporated Memorandum of Law, doc. 20, be **granted**.

2.   The Second Amended Complaint, doc. 19, **be dismissed**.

3.   The Clerk be directed to **close** the file.

**Entered** in Jacksonville, Florida, on February 2, 2024.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

## Notice to the Parties

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.


c:
The Honorable Marcia Morales Howard, United States District Judge
Jason William Imler, Esquire
Joel R. Mohorter, Esquire
Matthew Carter Giovenco, Esquire